Glenn Franklin ANDERSON, Pro se,

v.

The UNITED STATES, Defendant.

No. 90–569C.

United States Claims Court.

Dec. 14, 1990.

See also 21 Cl.Ct. 143.

Glenn Franklin Anderson, Sealy, Tex., pro se.

John S. Groat, Washington, D.C., with whom were Asst. Atty. Gen. Stuart M. Gerson, Director David M. Cohen and Asst. Director Thomas W. Petersen, for defendant.

## ORDER

LYDON, Senior Judge.

■ In this military pay case,[1] plaintiff, proceeding *pro se*, seeks reinstatement to active duty, back pay and allowances, and damages[2] on the grounds the Department of the Air Force improperly refused to reenlist him after the expiration of his term of enlistment. Defendant has moved to dismiss plaintiff's complaint contending the court lacks jurisdiction to entertain the claim set forth in the complaint. Plaintiff opposes defendant's motion to dismiss. Both parties have moved for summary judgment. Based on the submissions of the parties, oral argument being deemed unnecessary, the court finds that plaintiff is not entitled to the relief he seeks.

### I

Plaintiff had served as an enlisted man in the Air Force for some twelve years in 1980. At the expiration of his term of service (ETS) in 1980, plaintiff, on August 18, 1980, reenlisted for another four-year term of service with an ETS date of August 17, 1984. On March 20, 1984, plaintiff had filed with the Air Force an election to reenlist in the Air Force following expiration of his ETS on August 17, 1984.

■ On May 11, 1984, plaintiff was placed on the control roster. Placement on the control roster was governed by Air Force Regulations (AFR) 35–32, par. 15. The purpose of the control roster was to provide commanders with a tool to help rehabilitate, control and evaluate individuals who were failing to meet or maintain the standards of their grade and experience levels. Air Force Regulations 35–32, par. 15 provide that an individual may be placed on the control roster when his conduct, behavior or daily performance requires special attention, observation, evaluation or rehabilitation. Plaintiff's Commander placed plaintiff on the control roster because his duty performance was declining and such an action enabled the Commander to more closely monitor his performance in order to make a credible determination of his reenlistment eligibility status prior to his ETS of August 17, 1984. Plaintiff was so advised by his Commander in a letter dated August 11, 1984, and was further advised in said letter that "[I]t was not my intent to place you on the Control Roster expressly to deny your reenlistment eligibility. If I had wished to do that, an AF Form 418 would have been more appropriate."[3] The

---

1. This case was transferred to this court from the United States District Court for the Southern District of Texas, Houston Division, on June 26, 1990. The complaint had been filed in the District Court on August 16, 1989. The amended complaint was filed in this court on July 3, 1990, and was subsequently amended on August 20, 1990.

2. Plaintiff in his jurisdictional statement relies on 28 U.S.C. § 1491 and 5 U.S.C. § 5596 for reinstatement, and back pay and allowances claims, and the "Civil Rights Act of 1964," 42 U.S.C. § 1983 (Civil Action for deprivation of rights), § 1985(3) (Conspiracy to interfere with civil rights) and § 1986 (Action for neglect to prevent civil rights violations) for his damage claims. While this court has jurisdiction in military pay cases seeking reinstatement, back pay and allowances generally, under 28 U.S.C. § 1491, it has no jurisdiction over cases arising under the Civil Rights Act. Jurisdiction over such cases resides in the district courts relative to violations of any provision of the Civil Rights Act. *See* 42 U.S.C. § 1988. *See Rogers v. United States,* 14 Cl.Ct. 39, 50 (1987) (Claims Court has no jurisdiction over discrimination claims based on Federal Civil Rights statutes), *aff'd,* 861 F.2d 729 (Fed.Cir.1988), *cert. denied,* 490 U.S. 1034,

109 S.Ct. 1930, 104 L.Ed.2d 403 (1989); *Barbee v. United States,* 14 Cl.Ct. 387, 389 (1988) (Civil rights claims are outside Claims Court's jurisdiction), *aff'd,* 867 F.2d 616 (Fed.Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 52, 107 L.Ed.2d 20 (1989). *See also Crucible, Inc. v. United States,* 219 Ct.Cl. 124, 130–31, 591 F.2d 643, 646 (1979) (Attorney fees section of Civil Rights Act does not apply to tax refund suit in Court of Claims). *See generally Brown v. GSA,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976).

3. Plaintiff contends that his placement on the control roster was procedurally and substantively defective. In support of this contention, plaintiff submitted a taped conversation which allegedly established that his Commander unlawfully placed plaintiff on the control roster. The tape is unintelligible. However, plaintiff's uncertified affidavit with regard to the contents of the tape reveals that plaintiff was placed on the control roster to give his Commander the opportunity to evaluate plaintiff's performance. Air Force regulations indicate that placing plaintiff on the control roster for such a purpose is entirely legitimate, and therefore plaintiff's affidavit does little to support his position. Moreover, a review of the other materials at hand likewise do not support his contention.

Commander detailed his reasons for placing plaintiff on the control roster in his August 11, 1984 letter, and observed therein that despite his effort to motivate plaintiff to improve his performance, there were little indications as of the date of said letter that improvement was forthcoming. The Commander's letter of August 11, 1984 was written in response to plaintiff's grievance filed with the Commander on August 10, 1984.

In general, control roster observation periods are in increments of four months, not to exceed a total period of eight continuous months. Control roster observation periods automatically expire as of 2400 hours on the last day of the observation period, unless action is taken on or before that date to remove or continue a member on the control roster. It would not be unreasonable to conclude that plaintiff's August 10, 1984 grievance letter to his Commander was an effort to eliminate his control roster status and the Commander's August 11, 1984 response as a declination to do so. The significance of his status on the control roster will now become apparent as far as this litigation is concerned.

An individual on the control roster as of the expiration of his term of service is deemed by Air Force regulations ineligible for consideration for reenlistment. If plaintiff on the date of his ETS was not on the control roster, he would be eligible for consideration for reenlistment under the Selective Reenlistment Program (SRP) set forth in AFR 35–16. Plaintiff would have been eligible for such consideration because of his length of service (over sixteen years). It is important to bear in mind that one is not guaranteed reenlistment under the SRP, but is merely eligible to be considered for reenlistment.[4]

Plaintiff's term of enlistment expired on August 17, 1984. At this time he was separated from the Air Force with an honorable discharge. As of August 17, 1984, plaintiff had served on active duty with the Air Force for sixteen years, eight months and twenty-five days.

Plaintiff, on October 15, 1986, applied to the Air Force Board for the Correction of Military Records (AFBCMR or Board), requesting that he be reinstated on active duty with all privileges, pay and allowances from the time of discharge to the present date. Plaintiff claimed before the Board that inappropriate standards were applied to his on- and off-duty performance,[5] which resulted in his discharge and a lack of

---

The decision to place plaintiff on the control roster was a matter for the discretion of the Commander and the totality of the circumstances do not manifest an abuse of that discretion. While plaintiff challenges the Commander's performance evaluations, those evaluations were his to make since performance and fitness for duty evaluations are not a judicial province. *Maier v. Orr,* 754 F.2d 973, 984 (Fed.Cir.1985).

**4.** Plaintiff argues that he was entitled to SRP and that it was procedural and substantive error not to consider him for reenlistment under the SRP Regulations. The simple answer is that plaintiff did not receive SRP consideration because he was still on the control roster at the time he reached his ETS. Assuming, *arguendo,* that he was not on the control roster on the date of his ETS, and that he was considered under the SRP for reenlistment, the materials at hand, particularly the Commander's letter of August 11, 1984, suggest rather strongly that he most probably would not have been selected for continued service.

**5.** Plaintiff argues that since he received an overall "7" on his Airman Performance Ratings (APRs), which translated into a satisfactory per-

formance indication, the Commander was not authorized to place him in a control roster status. However, defendant contends this performance rating places plaintiff in the bottom one percent for all Air Force master sergeants. Moreover, there was other derogatory data supportive of the Commander's action in this regard. In any event, it is, as indicated earlier, the Commander's duty and prerogative to balance the good points and bad points of airmen under his command and make evaluations and take action relative thereto for the good of the service. *See* n. 3, *supra.* In the civilian pay context, which is at times equated with military pay cases, *see Sammt v. United States,* 780 F.2d 31, 32 (Fed.Cir.1985), the Court of Claims found no contradiction between an employee's "satisfactory" performance rating and the employee's subsequent removal for disruptive conduct, as a performance rating encompasses many facets of an employee's work. *De Busk v. United States,* 132 Ct.Cl. 790, 796–97 (1955), *cert. denied,* 350 U.S. 988, 76 S.Ct. 474, 100 L.Ed. 854 (1956); *see also Armstrong v. United States,* 186 Ct.Cl. 539, 545, 405 F.2d 1275, 1279, *cert. denied,* 395 U.S. 934, 89 S.Ct. 1997, 23 L.Ed.2d 449 (1969) (unsatisfactory performance rating not prerequisite to removal of inefficient employee).

administrative due process.[6] On June 16, 1988, the Board denied his application for relief finding insufficient relevant evidence demonstrating the existence of probable error or injustice. Plaintiff subsequently filed four reconsideration requests with the Board, all of which were denied, the last denial being made on July 14, 1989.

## II

Defendant's motion to dismiss is based on the contention that in the absence of a mandatory statutory or regulatory right to reenlist, plaintiff has no claim based on the failure of the Air Force to allow him to reenlist.[7] Indeed, the court lacks jurisdiction to direct the Air Force to reenlist plaintiff absent any statutory or regulatory mandate that plaintiff has such a right.[8] *Austin v. United States,* 206 Ct.Cl. 719, 724, *cert. denied,* 423 U.S. 911, 96 S.Ct. 215, 46 L.Ed.2d 140 (1975); *see also Maier v. Orr,* 754 F.2d 973, 983 (Fed. Cir.1985) (Federal courts have uniformly declined to order relief beyond a current term of enlistment). As a result, plaintiff's complaint must be dismissed unless the court finds that plaintiff had a special statutory or regulatory right to reenlist. *See Diamond v. United States,* 170 Ct.Cl. 166, 344 F.2d 703 (1965); *Smith v. United States,* 155 Ct.Cl. 682 (1961). The court has not been cited to nor is it aware of any statute that gives plaintiff a mandatory right to reenlist. Examination of applicable Air Force regulations likewise do not confer on plaintiff a mandatory right to reenlist.

Regulations setting forth Air Force policy on reenlistment (AFR 35–16) provide in pertinent part:

... Reenlistment in the United States Air Force is an honor and a privilege, not a guaranteed right or entitlement. The Secretary of the Air Force may permit or deny the reenlistment of Air Force enlisted members.

All airmen must maintain the highest standards of professionalism, quality, and duty performance to be able to reenlist. Unit commanders are responsible for making sure that only the most highly qualified airmen are given the opportunity to reenlist.

Enlisted members who do not meet and maintain the professional standards required of career force members should be ... denied reenlistment under the Selective Reenlistment Program (SRP) according to chapter 4 of this regulation. (AFR 35–16, par. 6–1)

Chapter 4 of the regulations, referred to above, provides in pertinent part:

All airmen who are not ineligible to reenlist according to tables 6–2 (or) 6–4 are subject to SRP consideration. If an airman is ineligible to reenlist according to table 6–2 and (or) table 6–4 at the time SRP consideration is due, he or she WILL NOT be considered under the SRP until the ineligibility condition is resolved.... AFR 35–16, par. 4–3.

---

6. Plaintiff claimed that he was denied administrative due process because he was not considered for reenlistment under the SRP procedures, a matter discussed above. If the conclusion is accepted, as rationalized above, that plaintiff most probably would not have been selected for reenlistment under the SRP procedures, then failure to utilize such procedures, assuming they were violated, could reasonably be deemed at best harmless error. *See* RUSCC 61; *Smithkline Diagnostics, Inc. v. Helena Laboratories Corp.,* 859 F.2d 878, 892 (Fed.Cir.1988); *Sanders v. United States,* 219 Ct.Cl. 285, 310, 594 F.2d 804, 818 (1979).

7. In his submissions plaintiff contends that his separation on August 17, 1984, was unlawful. As indicated above, plaintiff was separated on that date because his term of enlistment expired. Plaintiff has received all the pay and allowances due for the period of his enlistment that expired on August 17, 1984. Even if one were to consider his separation as unlawful, he would not be entitled to recover any pay and allowances beyond the date on which his term of enlistment expired—in plaintiff's case here, August 17, 1984. *Clackum v. United States,* 161 Ct.Cl. 34, 36 (1963).

8. The rationale underscoring this principle is that a person may not sue under the Tucker Act (28 U.S.C. § 1491 or § 1346) for the pay and allowances of a position to which he has not been lawfully appointed or is otherwise not lawfully entitled to hold. *United States v. Testan,* 424 U.S. 392, 402, 96 S.Ct. 948, 950, 47 L.Ed.2d 114 (1976); *United States v. McLean,* 95 U.S. 750, 753, 24 L.Ed. 579 (1878).

As indicated previously, plaintiff's status on the control roster, which was a "table" matter, at the time SRP consideration was due left him outside the pale of SRP consideration.

A careful review of the Air Force regulations (AFR 35–16) on reenlistment establishes clearly that plaintiff had no *mandatory* or *automatic* right to reenlistment (emphasis supplied). *See Austin, supra,* 206 Ct.Cl. at 724.

Since plaintiff had no mandatory statutory or regulatory right to reenlist, this court lacks jurisdiction to consider his claim that he was improperly denied reenlistment.

### III

■ Plaintiff is proceeding *pro se* in this case. While plaintiff's complaint and responding briefs leave much to be desired, every effort has been made to understand and follow his arguments giving due consideration to his *pro se* status. *See Clinton v. United States,* 191 Ct.Cl. 604, 605–06, 423 F.2d 1367, 1368 (1970). Plaintiff, in responding to defendant's dispositive motions, ignored completely defendant's jurisdictional argument discussed above. Instead, plaintiff focused on his views that failure to reenlist him by the Air Force violated his constitutional rights and Air Force Regulations.[9] Plaintiff's basic contention is that the Air Force improperly used the control roster. An examination of the materials before the court reveal no

procedural violations by the Air Force.[10] In military pay cases such as the one now before the court, action by the court is limited to review of the record developed before the administrative review board, here the AFBCMR. *See Long v. United States,* 12 Cl.Ct. 174, 176–77 (1987). Use of the control roster was provided by regulation. There is no reliable indication its use, under the circumstances, was improper or an abuse of discretion.[11] Because plaintiff was on the control roster he was not, under the regulations, subject to SRP consideration. The actions taken by the Commander were in accord with the regulations. Under the regulations, the Commander was entrusted with the responsibility of ensuring that only the most highly qualified airmen were allowed to reenlist. Accordingly, his discretionary judgment relative to the standards of performance necessary in this regard must be accepted. *See Maier v. Orr, supra,* 754 F.2d at 984.[12]

■ As noted above, the AFBCMR considered plaintiff's reenlistment claim and found no probable error or injustice in the Air Force's failure to allow plaintiff to reenlist. Also, while plaintiff is *pro se* before the court, he was represented by counsel before the Board. It is well established that Correction Board decisions are binding on this court unless plaintiff can establish that the Correction Board determinations were arbitrary, capricious, contrary to law or unsupported by substantial evidence. *Wronke v. Marsh,* 787 F.2d 1569, 1576

---

**9.** Plaintiff claims the procedures utilized to deny him reenlistment were constitutionally invalid in that the Supreme Court in *Vitarelli v. Seaton,* 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959), has held that agencies of the Government must comply with their own regulations and the Air Force violated its reenlistment regulations. *See also Sargisson v. United States,* 913 F.2d 918, 921 (Fed.Cir.1990). However, plaintiff's due process and equal protection claims are not actionable in this court. *Carruth v. United States,* 224 Ct.Cl. 422, 445, 627 F.2d 1068, 1081 (1980); *Adams v. United States,* 20 Cl.Ct. 132, 135 (1990).

**10.** In military pay cases such as this one, action by the court is limited to review of the record developed before the administrative review board, here the AFBCMR. *See Long v. United States,* 12 Cl.Ct. 174, 176–77 (1987).

**11.** In his motion for summary judgment, plaintiff contends that he was unlawfully placed on the control roster and, for that reason, his separation upon expiration of his enlistment was unlawful. Plaintiff complains that his record of performance was such that he did not deserve control roster status. His Commander thought otherwise. The record is such that the Commander's position is rational and well within the pale of his discretion.

**12.** Any dispute about the performance standards utilized in determining control roster status might well be deemed a nonjusticiable one. *See Sargisson v. United States,* 913 F.2d 918, 921–22 (Fed.Cir.1990).

(Fed.Cir.), *cert. denied,* 479 U.S. 853, 107 S.Ct. 188, 93 L.Ed.2d 121 (1986). Indeed, plaintiff must establish by "cogent and clearly convincing evidence" that the Board determinations are defective. *Id.* Plaintiff has failed to carry his burden in this regard. Even if the court were to conclude that there was some injustice in this case, which the court does not conclude, the court will not substitute its judgment for that of the Board when reasonable minds could reach differing conclusions. *Sanders v. United States, supra,* 219 Ct.Cl. at 302, 594 F.2d at 813. Under these circumstances, the court is bound by the Board's determinations.

Finally, plaintiff levels charges of bias, discrimination, falsification of documents, violations of plaintiff's civil rights, wilful and malicious actions, malice and conspiracy against the Department of the Air Force in general and against his superior Air Force officers in particular, relative to his failure to be reenlisted. The materials before the court do not support such allegations. Moreover, there is a rebuttable presumption that military officials discharge their duties correctly, lawfully, and in good faith. *Sanders v. United States, supra,* 219 Ct.Cl. at 302, 594 F.2d at 813. It has been said, in this regard, that it takes "well-nigh irrefragable proof" to overcome this presumption of good faith. *Knotts v. United States,* 128 Ct.Cl. 489, 492, 121 F.Supp. 630, 631 (1954). That presumption has not been rebutted in this case.

## IV

Based on the above discussion, the court concludes that it is without jurisdiction to rule on plaintiff's claim seeking reenlistment in the Air Force. Indeed, even if the claim were considered on the merits, the court would be of the view that the Air Force's declination to reenlist plaintiff was in accord with applicable regulations and was otherwise correct. The decision not to allow plaintiff to reenlist was within the discretion of the Air Force and said discretion was not abused. The clerk is directed to enter judgment dismissing plaintiff's complaint. No costs.